**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SLOBODANKA BLAZEVSKA,
surviving and personal representative
of the ESTATE OF RISTO
BLAZEVSKI, deceased; et al.,

       Plaintiffs,

    v.

RAYTHEON AIRCRAFT COMPANY,
a Kansas Corporation,

       Defendant.
_____/

No. C 05-4191 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing on April 5, 2006, before this court. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, and good cause appearing, the court GRANTS defendant's motion.

**BACKGROUND**

This is a case brought pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs are the families of eight Macedonian residents who were killed in a plane crash in Bosnia on February 26, 2004. The aircraft crashed in a mountainous area near Mostar, Bosnia. One of the decedents was Macedonian President Boris Trajkovski. The aircraft was en route from Skopje, Macedonia to an investment conference in Bosnia. Plaintiffs assert three claims under Macedonian law related to defendant's design and/or manufacture of the aircraft, including a claim that defendant failed to design the aircraft to be sufficiently crashworthy.

The aircraft, a Beechcraft Super King Air 300 ("aircraft"), was manufactured by Beech Aircraft Corporation, now Raytheon Aircraft Company ("Raytheon"), a Kansas corporation. The aircraft was delivered following its manufacture in April 1980 to the Republic of Macedonia ("Macedonia"). There is some dispute regarding whether Macedonia was the initial purchaser of the aircraft. Raytheon asserts that the first purchaser was Wolfgang Denzel in Augsburg, Germany. Plaintiffs contend on the other hand that Denzel was merely a Beech sales agent who took possession of the aircraft prior to its delivery to Macedonia. It is, however, undisputed that Raytheon never maintained, operated, modified, repaired, or had possession of the aircraft after its 1980 delivery overseas.

**DISCUSSION**

Raytheon moves for summary judgment, arguing that plaintiffs' action is barred by the General Aviation Revitalization Act ("GARA"), 49 U.S.C.A. § 40101 et seq., a statute of repose which bars personal injury and wrongful death actions against aircraft manufacturers arising more than 18 years after an aircraft is delivered to its first purchaser or lessee. In response, plaintiffs do not contest that the elements of GARA are satisfied here; nor do they argue that any of GARA's exceptions apply. Instead, as a "defense" to Raytheon's GARA defense, plaintiffs argue that the presumption against extraterritoriality precludes GARA's application in this case.

I.   Legal Standards

    A.   Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

2

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

B.   GARA Generally

In 1994, Congress enacted GARA, 49 U.S.C.A. § 40101 et seq., because it "was deeply concerned about the enormous product liability costs that our tort system had imposed upon manufacturers of general aviation aircraft." *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001). Congress "believed that manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold." *Id.* (citing H.R. Rep. No. 103-525 pt. I, at 1-4 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1638-41). Congress therefore enacted GARA, a statute of repose generally limiting aircraft manufacturers' liability for accidents to those occurring within 18 years of the first delivery of the airplane. *See id.; see* GARA § 2(a)(1).

GARA provides in pertinent part:

>   (a) IN GENERAL.   Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred –
>
>     (1)   after the applicable limitation period beginning on —
>
>       (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
>
>       (B) the date of first delivery of the aircraft to a person

> engaged in the business of selling or leasing such aircraft; or
>
> (2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a).[1]

There are four specifically delineated exceptions as well as a "rolling" feature, which extends the limitations period, none of which are at issue here.

The Ninth Circuit has explained that GARA

> does not run from the date on which an injury occurs. There will be a statute of limitations which runs from that date. Rather, it runs from what amounts to the date of the first transfer from the manufacturer. Thus, if an accident occurs one day before the GARA period runs, an action will be possible and will be governed by the usual statute of limitations. If it occurs on the day after the GARA period runs, no action whatsoever is possible.

*Lyon*, 252 F.3d at 1084.

### C. Extraterritoriality Doctrine

There is a "longstanding principle of American law that legislation is presumed to apply only within the territorial jurisdiction of the United States unless the contrary affirmative intention of Congress is clearly expressed." *Arc Ecology v. United States Dept. of the Air Force*, 411 F.3d 1092, 1097 (9th Cir. 2005) (citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991) ("Aramco")). "Courts must assume that Congress legislates with knowledge of the presumption that a statute 'is primarily concerned with domestic conditions.'" *Id.* "In essence, then courts must resolve restrictively any doubts concerning the extraterritorial application of a statute." *Id.* (citing *Smith v. United States*, 507 U.S. 197, 204 (1993)).

In *Aramco*, the Supreme Court held that a statute could avoid the presumption against extraterritoriality only through a "clear statement" in the statute itself indicating

---

[1]Raytheon has included a copy of the Act at Tab 1 of its Compendium of Authorities in support of its motion.

4

congressional intent to provide relief to such foreign claimants. 499 U.S. at 258 (concluding that Title VII of the 1964 Civil Rights Act did not apply extraterritorially to regulate employment practices of U.S. firms that employ Americans abroad). However, in *Smith*, "the Supreme Court relaxed the requirement of a 'clear statement' of congressional intent within the statute." *Arc Ecology*, 411 F.3d at 1098 n.2 (citing *Smith*, 507 U.S. at 204). The *Smith* Court held "that there must only be 'clear evidence of congressional intent to apply the' statute extraterritorially." *Id.* (citing *Smith*, 507 U.S. at 204) (concluding that Federal Tort Claims Act by which government waived sovereign immunity did not apply to carpenter killed in Antarctica who was under contract with U.S. agency even though Antarctica is "a sovereignless region without civil tort law of its own")*.*

II.     Defendant's Motion

Because the extraterritoriality issue is raised by plaintiffs in their opposition papers, Raytheon's discussion of the issue is contained primarily in its reply brief. Additionally, many of plaintiffs' arguments in their opposition are in anticipation of Raytheon's reply.

In opposition to Raytheon's motion, plaintiffs argue that the presumption against extraterritoriality applies to GARA in this case. They contend that the presumption applies because this case "involves alleged injuries to foreign citizens in their home countries, caused by the activities of United States defendants that occurred at least partly in the United States." Plaintiffs argue that this presumption against the extraterritorial application of federal statutes can only be rebutted by a clearly expressed, contrary intent by Congress.

Plaintiffs contend that "the nature or purpose of the United States statute is irrelevant" with respect to whether the presumption applies. They argue that "[t]he rule is clear: if an incident takes place outside the United States, United States statutes will not govern, absent a clear and explicit indication that Congress so intended." They further assert that this is irrespective of whether the statute is a remedial one. *See Kollias v. D&G Marine Maintenance*, 29 F.3d 67, 71 (2d Cir. 1994). They note that prior to GARA's

5

enactment, there were few if any federal statutes like GARA, which operate as defensive federal statutes.

Additionally, plaintiffs argue that GARA is applicable even if the aircraft itself was manufactured in Kansas. Plaintiffs acknowledge that the location of the aircraft's design and manufacture is "certainly an important consideration" when deciding issues such as a convenient forum. However, they assert that "the Supreme Court has stated very clearly that only one factor is relevant in applying the presumption against territoriality: the location of the event." *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711-712 (2004) (calling into question utilization of "headquarters doctrine" in tort cases used by federal courts in some cases "to assume jurisdiction over tort claims *against* the Government for foreign harm") (cited by plaintiffs on the record at the April 5, 2006 hearing); *see also Stoddard v. Ling-Temco-Vought, Inc.*, 513 F.Supp. 314, 318 (C.D. Cal. 1981) (holding in wrongful death lawsuit based on a plane crash that occurred over the Pacific Ocean, that "a tort is deemed to occur at the place where injury is sustained regardless of the place of origin of the negligent act").

Plaintiffs further contend that this is not a case where domestic effects undermine the extraterritoriality presumption. Plaintiffs argue that any rules relating to liability will therefore have an extraterritorial effect "notwithstanding certain connections between the controversy and the United States." Plaintiffs note specifically the Supreme Court's decisions in *Aramco* and *Smith*, and also the Ninth Circuit's decision in *Subafilms Ltd. v. MGM*, 24 F.3d 1008 (9th Cir. 1994), in support of their argument that domestic effects alone are not enough to defeat the presumption.

In reply, Raytheon argues that the extraterritoriality doctrine is inapplicable here for essentially two reasons. First, Raytheon argues that the presumption is inapplicable because plaintiffs are not affirmatively seeking relief under a United States statute – but instead under Macedonian law, and GARA itself does not seek to regulate conduct, nor does it create a cause of action. Second, regarding the location of the conduct regulated

6

by GARA, Raytheon contends that the conduct giving rise to plaintiffs' claims – Raytheon's design and manufacture of the aircraft – occurred solely in the United States, and therefore the extraterritorial doctrine is inapplicable. Raytheon relies on a D.C. Circuit case in which the court held that "[b]y definition, an extraterritorial application of a statute involves the *regulation* of conduct that occurs beyond U.S. borders." *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993) (emphasis added).

Raytheon further asserts that GARA is simply a statute of repose. It argues that the presumption against extraterritoriality is a jurisdictional concept, and that since this court has diversity jurisdiction and all of plaintiffs' claims arise under Macedonian law, the presumption is inapplicable here. Raytheon also argues that in all of the controlling cases, including those cited by plaintiffs, the plaintiffs in those cases have all, unlike plaintiffs here, sought *affirmative* relief under a United States statute for *conduct* that occurred in a foreign country.

III.    Analysis

The court has set forth the arguments of the parties in some detail. They have raised numerous issues and framed them differently from each other. But after a careful review of the papers and the authorities upon which the parties rely, the court concludes that the issue presented here is more straightforward than the parties' papers suggest.

As previously stated, the presumption against extraterritoriality generally means that a law passed by Congress applies only to conduct occurring within the territory of the United States. As the parties seem to recognize, there is generally a two-step approach with respect to determining whether the presumption applies. The initial inquiry requires the court to determine whether or not the presumption applies at all; here, whether the application of GARA to the conduct it is designed to regulate presents an issue of extraterritoriality. *See, e.g., Gushi Bros. Co. v. Bank of Guam,* 28 F.3d 1535, 1538-39 (9th Cir. 1994); *Massey*, 986 F.2d at 531-32. This typically requires considering whether the statute seeks to regulate conduct in the United States or in another sovereign country. *See*

7

*id.* If the court determines that the conduct occurred beyond U.S. borders, then the second step requires the court to consider whether there is "'clear evidence of congressional intent to apply' the statute extraterritorially." *Arc Ecology*, 411 F.3d at 1098 n.2 (citing *Smith*, 507 U.S. at 204).

In this case, the court need not reach the second step, because the conduct GARA seeks to regulate is conduct occurring only in the United States. Plaintiffs argue that the conduct the court should focus on, is not really conduct at all but the "event;" here, the plane crash. They argue that federal statutes do not apply to events in a foreign country. Defendant, on the other hand, focuses on the design and manufacture of the aircraft. It argues that because the plane was designed and manufactured domestically, GARA bars the lawsuit. Defendant's view is closer to that of the court's, but is not identical.

Neither side has chosen to examine the actual language of GARA in making these arguments. GARA does not purport to regulate either accidents or the manufacture of airplanes. Rather, if it can be construed to "regulate" any "conduct", it must be construed to regulate litigation against manufacturers of airplanes. It provides a procedural bar, in much the same way a statute of limitations does. It applies to litigation brought or contemplated against manufacturers in the federal and state courts of the United States. As Congress has no power to regulate litigation in foreign countries, it is difficult to see how GARA could be applied by a federal court extraterritorially. It would be up to any foreign court to determine under its own choice of law principles whether to apply GARA to litigation occurring within its borders.

The parties cited no Ninth Circuit authority that is on point and the court is aware of none. However, the *Massey* case, cited by defendant at the hearing, is most instructive. In *Massey*, an environmental group brought a lawsuit under the National Environmental Policy Act ("NEPA"), attempting to enjoin the National Science Foundation ("NSF") from permitting the incineration of food waste in Antarctica. 986 F.2d at 531-32. The D.C. Circuit held that the presumption against extraterritoriality is not applicable when the

8

United States District Court
For the Northern District of California

conduct regulated by the government occurs within the United States. *Id.* at 531. The court rejected NSF's argument that the presumption barred NEPA's application to agency decisions with impact outside United States territory. *Id.* at 531-32. The *Massey* court ultimately concluded that "NEPA is designed to control the decisionmaking process of U.S. federal agencies, not the substance of agency decisions," and that therefore the activity being regulated by NEPA was not the construction of the food waste facility in Antarctica, but instead the agency decisionmaking process that authorized the facility's construction. *Id.* The court then concluded that when the activity regulated by the statute occurs primarily within the United States, the presumption does not apply "[e]ven where the significant effects of the regulated conduct are felt outside the U.S." *Id.* at 531. Because the NSF in *Massey* had conducted its decisionmaking process largely within the U.S., the D.C. Circuit found that NEPA "impose[d] no substantive requirements which could be interpreted to govern abroad," and the presumption against extraterritoriality did not apply. *Id.* at 533.

Similarly, GARA is designed to regulate conduct – the filing of civil lawsuits – in the United States and imposes no substantive requirements which could be interpreted to govern conduct abroad. Thus, the court agrees with defendant, albeit for a different reason, that the presumption against extraterritoriality does not apply in this case because the conduct GARA regulates is inherently domestic.

The parties spent a considerable amount of time in their papers and at the hearing on an issue they chose to frame as whether the presumption against extraterritoriality applies to both statutes that create a cause of action and those that operate defensively. Defendant relies on the Southern District of Texas decision in *Alter v. Bell Helicopter Textron, Inc.*, 944 F.Supp. 531, 541 (S.D. Tex. 1996). That court is the only federal court to *explicitly* address the issue of GARA's application to crashes occurring outside of the

9

United States.[2]  In *Alter,* the surviving plaintiffs filed two separate wrongful death products liability actions in Texas state court arising out of a helicopter crash in Israel.  The plaintiffs argued that GARA did not apply to accidents that occur in a foreign country, and that Congress had not evinced an intent that the statute apply to accidents outside the United States.  *Id.* The district court distinguished the Supreme Court's decision in *Smith*, noting that it involved a statute, the FTCA, that *created* a cause of action.  *Id.*  By contrast, the court concluded that GARA "*eliminates* certain claims against aircraft and component manufacturers."  *Id.*  Thus, the *Alter* court essentially held that the presumption against extraterritoriality was not applicable, distinguishing between statutes that create claims and those that extinguish liability.  *Id.*

Plaintiffs rely primarily on *Kollias*, in which the plaintiff, an employee injured on a vessel on the high seas, sought review of the agency decision finding that the Longshore and Harbor Workers' Compensation Act ("LHWCA") did not apply to injuries on the high seas.  29 F.3d at 69.  Defendants in *Kollias* argued that the LHWCA did not apply extraterritorially to accidents occurring on the high seas.  Plaintiffs argued that the presumption against extraterritoriality did not apply to maritime legislation generally, citing a 1922 Supreme Court decision, *United States v. Bowman*, 260 U.S. 94 (1922).  The Second Circuit rejected plaintiffs' arguments, holding that:

> The Supreme Court's recent discussions of the presumption against extraterritoriality, none of which mentions *Bowman*, seem to require that *all* statutes, without exception, be construed to apply within the United States only, unless a contrary intent appears.

*Kollias*, 29 F.3d at 71 (citing *Smith*, 113 S.Ct. at 1183 & n.5; *Aramco*, 499 U.S. at 248).

The distinction the parties draw between affirmative and defensive statutes is not insignificant.  The court notes that all of the controlling Supreme Court and Ninth Circuit

---

[2] Other courts, however, have implicitly held that GARA applies to extraterritorial accidents.  *See Bain ex rel. Bain v. Honeywell Intern., Inc.*, 167 F.Supp.2d 932 (E.D. Tex. 2001) (involving accident that occurred in British Columbia); *Shen Li v. Bell Helicopter Textron, Inc.,* Def. Compendium at Exh.13 (N.D. Tex. 1996); *Campbell v. Parker-Hannifin Corp.*, 82 Cal. Rptr. 2d 202 (Cal. Ct. App. 1992).

10

cases have concerned the application of the presumption to a statute that created an affirmative cause of action rather than a procedural bar to liability. *See Aramco*, 499 U.S. at 258 (plaintiffs brought claims under Title VII of the 1964 Civil Rights Act); *Smith*, 507 U.S. at 1180 (plaintiffs brought claims under the FTCA); *Arc Ecology*, 411 F.3d at 1098 (plaintiffs brought claims under CERCLA); *Subafilms*, 24 F.3d at 1098 (plaintiffs brought claims under U.S. copyright laws); *Gushi Bros.*, 28 F.3d at 1537 (plaintiff sued the bank under the U.S. Bank Holding Company Act). Even the Second Circuit case relied on by plaintiffs for the proposition that the presumption applies to *all* statutes, *Kollias*, involved the plaintiff's assertion of a cause of action under a federal statute, the Longshore and Harbor Workers' Compensation Act. *See* 29 F.3d at 71.

While the court finds it unnecessary, in view of its earlier finding that the presumption is inapplicable here, to go so far as to find that the presumption against extraterritoriality applies *only* to statutes that create causes of action, the cited cases do support a finding that the presumption does *not* apply to statutes providing a bar to civil litigation in the United States. Moreover, where a statute, like GARA, operates simply as a procedural bar, the principles underlying the presumption do not come into play. Unlike statutes that create affirmative claims, there simply is no risk that application of GARA to this case will result in an "unintended clash[] between our laws and [Macedonian laws] which could result in international discord." *Aramco*, 499 U.S. at 248; *see also Subafilms*, 24 F.3d at 1098 (noting that the presumption's role in mitigating "clashes" between domestic and international law supported its application in that case).

Finally, in order for plaintiffs to prevail, the court would necessarily have to find that GARA does not apply to airplane crashes occurring in foreign countries. However, to find that Congress intended to create an exception to GARA's procedural bar in the case of foreign accidents would, as noted by the district court in *Alter*, "have the anomalous effect of preventing litigants from bringing an action in the United States for an accident occurring

11

in the United States while allowing litigants to bring the same action in the United States if the accident occurred abroad." 944 F.Supp. at 541.

## CONCLUSION

Because GARA bars all of plaintiffs' claims in this case, the court GRANTS defendant's motion for summary judgment as to all claims. This order fully adjudicates the motion listed at No. 17 of the clerk's docket for this case and terminates all other pending motions. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 12, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge